### Ex parte MARCIL.

(District Court, W. D. Washington, S. D.    September 19, 1913.)

#### No. 1,416.

PARDON (§ 14*)—PAROLE—GOOD TIME—"LEGAL CUSTODY"—"CONTROL."

    Act Cong. June 21, 1902, c. 1140, 32 Stat. 397 (U. S. Comp. St. Supp. 1911, p. 1701), provides that each prisoner confined, in execution of a sentence, in any United States penitentiary, whose record justifies it, shall be entitled to a deduction for good time, commencing from the first day of his arrival at the penitentiary. Act June 25, 1910, c. 387, 36 Stat. 819 (U. S. Comp. St. Supp. 1911, p. 1702), declares that every prisoner confined for a term of more than one year, whose record shows an observance of the prison rules, and who has served one-third of his term, may be released on parole. Section 3 declares that the parole shall be granted on such terms as the board of parole shall prescribe, the prisoner to remain, while on parole, in the legal custody, and under the control of the warden of the prison from which he was paroled, and until the expiration of the term or terms specified in his sentence, less such good time allowance as is provided. The act also provides for the retaking of a paroled prisoner who has violated his parole, at any time within the term or terms of his sentence, and for a hearing before the board, which may revoke the order and terminate the parole, and, if revoked, the prisoner shall serve the remainder of the sentence imposed; the time the prisoner was on parole not being taken into account to diminish the time of his sentence. *Held*, that "legal custody" and "control" did not contemplate actual custody or confinement of a paroled prisoner, and that such a prisoner was not subject to prison rules providing for a forfeiture of good time allowance by a breach of such rules, so that on his return for breach of his parole he was not subject to a forfeiture of his good time earned, in determining the date of the expiration of his sentence.

    [Ed. Note.—For other cases, see Pardon, Cent. Dig. §§ 28–31; Dec. Dig. § 14.*

    For other definitions, see Words and Phrases, vol. 2, pp. 1519–1552; vol. 8, p. 7617.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Application by J. A. Marcil for writ of habeas corpus. Granted, and petitioner discharged.

J. A. Marcil, pro se.

The United States Attorney, for respondent.

CUSHMAN, District Judge. This cause is for decision, after evidence taken, upon the petition of J. A. Marcil, a McNeil Island United States prisoner, for a writ of habeas corpus, and the return of the warden of the penitentiary thereto.

The return of the warden shows that, on May 3, 1909, the petitioner was sentenced to be confined in the penitentiary for a term of five years, which sentence commenced May 13, 1909; that petitioner was released on parole August 12, 1911, in accordance with the act of Congress of June 25, 1910; that, after being so released on parole for 230 days, petitioner was returned to confinement in the penitentiary May 29, 1912, on account of a violation of his parole, and for a failure to faithfully observe the rules governing him as a convict on parole; that, at the time petitioner was released on parole from the penitentiary, he had earned 216 days good time allowance, as provided in the act of June 21, 1902.

The return of the warden alleges that, by petitioner's act in violating the parole, the good time earned at the time of his parole was forfeited and canceled. The petitioner contends that the violation of the parole did not deprive him of this 216 days good time, and that he is now entitled to his freedom. The act of June 21, 1902, provides:

"Be it enacted," etc., "that each prisoner who has been or shall hereafter be convicted of any offense against the laws of the United States, and is confined, in execution of the judgment or sentence upon any such conviction, in any United States penitentiary, * * * whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence to be estimated as follows, commencing on the first day of his arrival at the penitentiary, prison, or jail. * * *"

The act of June 25, 1910, provides:

"Be it enacted," etc., "that every prisoner who has been or may hereafter be convicted of any offense against the United States, and is confined in execution of the judgment of such conviction in any United States penitentiary or prison, for a definite term or terms of over one year, whose record of conduct shows he has observed the rules of such institution, and who has served one-third of the total of the term or terms for which he was sentenced, may be released on parole as hereinafter provided."

Section 2 provides for a board of parole, to consist of the superintendent of prisons of the Department of Justice, the warden and physician of each United States penitentiary, "which shall establish rules and regulations for its procedure subject to the approval of the Attorney General." Section 3 provides grounds upon which the board of parole may parole a prisoner. The parole is granted—

"upon such terms and conditions, including personal reports from such paroled person, as said board of parole shall prescribe, and to remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled, and until the expiration of the term or terms specified in his sentence, less such good time allowance as is or may hereafter be

provided for by act of Congress; and the said board shall, in every parole, fix the limits of the residence of the person paroled, which limits may thereafter be changed in the discretion of the board. * * *

"Sec. 4. That if the warden of the prison or penitentiary from which said prisoner was paroled or said board of parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, at any time within the term or terms of the prisoner's sentence, may issue his warrant to any officer hereinafter authorized to execute the same, for the retaking of such prisoner. * * *

"Sec. 6. That at the next meeting of the board of parole held at such prison after the issuing of a warrant for the retaking of any paroled prisoner, said board of parole shall be notified thereof, and if said prisoner shall have been returned to said prison, he shall be given an opportunity to appear before said board of parole, and the said board may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence imposed, and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced. * * *

"Sec. 10. That nothing herein contained shall be construed to impair the power of the President of the United States to grant a pardon or commutation in any case, or in any way impair or revoke such good time allowance as is or may hereafter be provided by act of Congress."

Under section 4 of the act of March 3, 1891 (26 Stat. 839, c. 529 [U. S. Comp. St. 1901, p. 3725]), the Attorney General, in June, 1911, promulgated rules for the government and discipline of prisoners in the United States McNeil Island penitentiary. There are 95 rules. Rules 86, 93, and 95 provide:

"86. The good time law is printed in full elsewhere in this book. For violations of any of these rules and regulations you may lose part or all of your good time. A record of all violations is kept in the warden's office, and a copy of this record is sent to the Attorney General to be considered with every application for pardon or commutation of sentence."

"93. Under the provisions of the good time law, lost good time can only be restored by the Attorney General upon the recommendation of the warden."

"95. You must not try to escape. The officers and employés have very strict orders to prevent escapes, and if you make the attempt you may get badly hurt and, at the same time, lose your good time."

On September 1, 1910, the Attorney General approved the rules adopted by the board of parole for this prison. These rules, in part, are for the governing of prisoners on parole. There is nothing in them touching the good time allowance made for prisoners confined in the prison institution itself. The only penalty provided in them for the violation of parole is the revocation of the parole, the arrest and return of the prisoner to the institution itself, to serve the remainder of his term.

It is contended for respondent that the breaking of petitioner's parole, in violation of the rules of the parole board for his good conduct, deprived him of his earned good time allowance, provided by the act of June 25, 1910, because by the parole statute (section 3), during his parole, the convict is "in the legal custody and under the control of the warden"; that, therefore, the breaking of the rules of parole, also breaks the prison rules, and effects a forfeiture of the good time allowance thereby.

"Legal custody" and "control"—as used in this' act—do not contemplate actual custody or confinement, for the act provides that the paroled prisoner—

"shall be allowed to go on parole outside of said prison and in the discretion of the board, to return to his home."

And, again:

"The transportation furnished shall be to the place to which the paroled prisoner has elected to go, with the approval of the board of parole."

The qualified liberty contemplated by the parole law is in no sense that of the prison. The rules of the prison and those for paroled convicts are not made by the same officers. They are not made for the same purpose. While the prison rules contemplate the welfare of the prisoners and safety of society, they are largely, if not mainly, for the purpose of safeguarding those in charge of the prison; the prisoners from one another and to insure facility in restraining and detaining them. The rules for confined prisoners are minute and exacting. Those for paroled convicts are liberal and general.

The act provides a good time allowance, or reduction of sentence, for the prisoner "confined" "whose record of conduct shows that he has faithfully observed all the rules." The rules referred to are the rules of the prison for confined prisoners, not those for paroled convicts. The language is susceptible of no other meaning. When this act was passed, there was no parole law. It was not necessary to be specific. Therefore the language used was "all the rules," because there were no other rules than the prison rules for confined prisoners, and, when the parole law paraphrased and almost quoted this statute entire, the expression used became "the rules of such institution." Obviously the change was made to differentiate the rules for good conduct of detained prisoners—entitling them to good time allowance—from those of paroled prisoners.

The obedience to prison rule hastens the prisoner's freedom. Disobedience to parole forfeits freedom already given. The only effect of broken parole is provided by section 6 of the act:

"The said prisoner shall serve the remainder of the sentence originally imposed."

That is, the part of the sentence remaining when he was paroled, at which time, in the case before the court, it had been shortened 216 days by his good conduct. That the parole law was not intended to affect the good time act is further shown by section 10 of the parole law:

" * * * Nothing herein contained shall * * * in any way impair or revoke such good time allowance as is or may hereafter be provided by act of Congress."

Rules 86 and 95, of the prison rules above set out, disclose what is promised the prisoner for good conduct, and the warning therein is that, for a "violation of *these* rules and regulations"—that is, the rules and regulations for confined prisoners—good time will be lost.

The writ is granted for petitioner's discharge.